FILED IN CHAMBERS
U.S.D.C. Atlanta

OCT 16 2013

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

MATTHEW KLEINSMITH

Criminal Indictment

No.   2:13CR0037

THE GRAND JURY CHARGES THAT:

## Count One

1. Beginning on or before August 1, 2008 and continuing until on or after September 7, 2010, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, did devise and intend to devise a scheme and artifice to defraud Ron Onorato, doing business as The Northpoint Group, Inc. and Point Satellite and Point Berkeley, and did obtain approximately $3.1 million from Ron Onorato, doing business as The Northpoint Group, Inc. and Point Satellite and Point Berkeley, by means of false and fraudulent pretenses, representations, and promises, and by the omission of material facts, knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and that said omissions were of material facts, and the defendant did execute said scheme and artifice to defraud and to obtain money by fraud by means of wire, radio, and television communications of certain signs, signals, and sounds in interstate commerce.

2. It is pertinent to the scheme and artifice to defraud that Ron Onorato (Onorato) was a real estate developer, doing business as Northpoint Group Inc., and that two of his projects were Point Satellite and Point Berkeley located in the Northern District of Georgia.

3. It is further pertinent to the scheme and artifice to defraud that Onorato obtained construction loans from lending institutions to fund construction of the Point Satellite and Point Berkeley projects.

4. It is further pertinent to the scheme and artifice to defraud that by late summer 2008, Onorato had completed construction of Point Satellite and Phases One and Two of Point Berkeley and was engaged in the construction of Phase III of Point Berkeley.

5. It is further pertinent to the scheme and artifice to defraud that in the fall 2008, Onorato sought permanent financing that would be used to pay off the construction loans he had obtained to build Point Satellite and Point Berkeley. However, because of the financial circumstances of the economy at the time, Onorato was not able to obtain permanent financing from traditional banking institutions because those institutions were not making new loans. Therefore, Onorato was forced to seek permanent financing from non-conventional sources.

6. It was part of the scheme and artifice to defraud that in the fall 2008, defendant operated a business called Park Capital Group, LLC, purportedly located in Miami, Florida.

7. It was further a part of the scheme and artifice to defraud that a third party introduced Onorato to defendant. Defendant portrayed himself to Onorato as a loan broker who could obtain non-conventional financing for Onorato.

8. It was further a part of the scheme and artifice to defraud that on or about November 3, 2008, defendant told Onorato that he was involved with a program that would yield ten to one leverage, meaning that Onorato would pay in advance 10% of the requested loan amount. Defendant further told Onorato that he had closed multiple loans ranging from $2 million to $70 million of this type with Ciaxa Bank in Madrid, Spain. However, in truth and in fact, defendant had not closed multiple multi-million dollar loans with Ciaxa Bank in Spain in which a 10% advance fee was required.

9. It was further a part of the scheme and artifice to defraud that defendant advised Onorato that he would be traveling to Spain the last week of November, and that if Onorato wanted to obtain the 10 to 1 leveraged financing, he would need to make a commitment before defendant left on his trip.

10. It was further a part of the scheme and artifice to defraud that Onorato asked defendant to provide him with a reference for a similar transaction defendant had closed in the past. Defendant stated that it would not be a problem and that he would arrange for Onorato to talk to Robert Lopez, a real estate developer in Florida for whom defendant had just closed a $40 million loan. Onorato and defendant, along with third parties, talked on the telephone with a person who claimed to be Robert Lopez, a real estate developer in Miami, Florida. Robert Lopez told Onorato, defendant, and the other persons on the call

3

that he had recently closed a $40 million loan obtained for him by defendant and that everything had gone smoothly just as defendant had advised him in advance that it would. However, in truth and in fact, the person who purported to be Robert Lopez, the real estate developer on the phone call, was a shill employed by defendant to portray himself as a real estate developer, that the person was not a real estate developer, and that the person had not closed a multi-million dollar loan through defendant.

11. It was further a part of the scheme and artifice to defraud that on or about November 24, 2008, defendant caused Onorato to wire transfer $1.36 million to defendant, doing business as Park Capital Group, LLC. Onorato sent the $1.36 million to defendant based on defendant's false and fraudulent representations that he would leverage the $1.36 million times 10 and obtain a loan from Ciaxa Bank for Onorato in the amount of $13,600,000 which Onorato intended to use as permanent financing for his Point Satellite project. However, in truth and in fact, on November 25, 2008, defendant wired transferred $1 million of the funds sent to him by Onorato to Realistic Enterprises in partial settlement of a lawsuit filed by Realistic Enterprises against defendant for recovery of a similar advance fee paid to defendant by Realistic Enterprises to obtain a loan for Realistic Enterprises. Defendant failed to advise Onorato that he intended to send most of Onorato's money to Realistic Enterprises as repayment for defendant's failure to obtain a loan on behalf of Realistic Enterprises. Defendant's failure to advise Onorato that defendant was using Onorato's money in this way was a material omission.

4

12. It was further a part of the scheme and artifice to defraud that in late November 2008, defendant reported to Onorato that he had just returned from his trip to Spain, that his trip was successful, and he had been promised funding for Onorato's loan in mid-January. However, in truth and in fact defendant did not travel to Spain in late November 2008, and defendant did not obtain a commitment from Ciaxa Bank to lend Onorato $13,600,000.

13. It was further a part of the scheme and artifice to defraud that defendant also told Onorato that he had obtained a commitment from Ciaxa Bank to provide funding for permanent financing for Onorato's Point Berkeley project and that in order for Onorato to obtain the financing he would have to pay another advance fee of 10% of the loan amount. However, in truth and in fact defendant had not obtained a commitment from Ciaxa Bank to provide funding for Onorato's Point Berkeley project.

14. It was further a part of the scheme and artifice to defraud that defendant invited Onorato to visit him at his new house in Cincinnati, Ohio over the Thanksgiving weekend. Onorato traveled to Cincinnati to the address provided by defendant and met defendant at a multi-million residence with a Ferrari automobile parked in the driveway. Defendant claimed that he had just purchased the residence and that he had bought the Ferrari as a retirement gift for his father. Defendant also stated that he was planning to open a Park Capital Group office in Cincinnati. Defendant took Onorato to an office building in Cincinnati which defendant claimed he had just purchased. Defendant told Onorato that he intended to build out the third floor which would serve as the

Cincinnati office for Park Capital Group. However, in truth and in fact, the residence did not belong to defendant, defendant had not purchased the office building, and defendant did not have an agreement to build out space for a Park Capital Group office in Cincinnati. Defendant also failed to advise Onorato that he had purchased the Ferrari with funds he had obtained from the advance fee Realistic Enterprises had paid to defendant to obtain funding for Realistic Enterprises. Defendant's failure to do so was a material omission.

15. It was further a part of the scheme and artifice to defraud that on or about December 12, 2008, defendant and Onorato entered into an agreement wherein defendant would obtain a loan in the amount of $34,400,000 on behalf of Onorato. Pursuant to the agreement, Onorato was to pay an advance fee of 5.1% or $1.75 million and defendant, doing business as Park Capital Group, was to pay an advance fee of 4.9%.

16. It was further a part of the scheme and artifice to defraud that on or about December 12, 2008, defendant caused Onorato to wire transfer $1.25 million to defendant, doing business as Park Capital Group, LLC. The $1.25 million was intended to be an advance fee which would be used by defendant to obtain a loan from Ciaxa Bank. Onorato sent the $1.25 million to defendant based upon defendant's false and fraudulent representations that defendant would use the funds to obtain a loan from Ciaxa Bank for Onorato in the amount of $34,400,000 which Onorato intended to use as permanent financing for his Point Berkeley project. However, in truth and in fact on December 12, 2008, defendant wired transferred $1 million of Onorato's money to a third party who was not involved

6

in loan financing with Ciaxa Bank. Defendant's intention to wire transfer $1 million to a third party who was not connected to Ciaxa Bank was an omission of a material fact by defendant.

17. It was further a part of the scheme and artifice to defraud that on or about December 16, 2008, defendant caused Onorato to wire transfer $500,000 to defendant, doing business as Park Capital Group, LLC. Onorato sent the $500,000 to defendant to complete the payment of the $1.75 million advance fee payment that defendant represented he would use to obtain a loan from Ciaxa Bank for Onorato in the amount of $34,400,000 which Onorato intended to use as permanent financing for his Point Berkeley project. However, in truth and in fact on December 16, 2008, defendant wired transferred Onorato's $500,000 to Realistic Enterprises in further settlement of defendant's debt to Realistic. Defendant's intention to wire transfer $500,000 to a Realistic Enterprises rather than use the funds as an advance fee to obtain a loan for Onorato with Ciaxa Bank was an omission of a material fact by defendant.

18. It was further a part of the scheme and artifice to defraud that thereafter defendant advised Onorato that he had again traveled to Spain to meet with officials at Ciaxa Bank and that he had successfully obtained the promised $34,400,000 in financing for Onorato's Point Berkeley project. However, in truth and in fact defendant did not travel to Spain, defendant did not contribute 4.9% toward the advance fee, and defendant did not obtain a commitment from Ciaxa Bank to lend Onorato $34,400,000.

7

19. On or about November 15, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, a telephone call between Ron Onorato in the Northern District of Georgia and defendant in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Two

20. The grand jury alleges each and every allegation set forth in paragraphs 1 through 18 of Count One above, as if each and every allegation was fully set forth herein.

21. On or about November 20, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, a telephone call between Ron Onorato and others in the Northern District of Georgia and defendant and a person purporting to be Robert Lopez, a

8

real estate developer who had recently obtained a loan of approximately $40 million with defendant's assistance, in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Three

22. The grand jury alleges each and every allegation set forth in paragraphs 1 through 18 of Count One above, as if each and every allegation was fully set forth herein.

23. On or about November 24, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, the wire transfer of $1.36 million from Onorato's banking institution in the Northern District of Georgia to Park Capital Group's banking institution in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Four

24. The grand jury alleges each and every allegation set forth in paragraphs 1 through 18 of Count One above, as if each and every allegation was fully set forth herein.

25. On or about November 30, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, a telephone call between Ron Onorato in the Northern District of Georgia and defendant in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Five

26. The grand jury alleges each and every allegation set forth in paragraphs 1 through 18 of Count One above, as if each and every allegation was fully set forth herein.

27. On or about December 12, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, the wire transfer of $1.25 million from Onorato's banking institution in the Northern District of Georgia to Park Capital Group's banking

10

institution in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Six

28. The grand jury alleges each and every allegation set forth in paragraphs 1 through 18 of Count One above, as if each and every allegation was fully set forth herein.

29. On or about December 16, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, and to obtain and attempt to obtain money from Onorato by means of false and fraudulent pretenses, representations, and promises and by the omission of material facts, did cause to be transmitted in interstate commerce by means of interstate wire, radio, and television communications certain signs, signals, and sounds, that is, the wire transfer of $500,000 from Onorato's banking institution in the Northern District of Georgia to Park Capital Group's banking institution in Miami, Florida, in violation of Title 18, United States Code, Section 1343.

## Count Seven

30. On or about November 25, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, did knowingly engage in, attempt to engage in, and cause others to engage in a monetary transaction by and through a financial institution affecting interstate and foreign commerce, in criminally derived property of an amount greater than $10,000, to wit: the

11

transfer of $1 million from a bank account held by defendant, doing business as Park Capital Group, LLC, in Miami, Florida, to a bank account held by Realistic Enterprises, in Cincinnati, Ohio, said $1 million having been derived from specified unlawful activity, that is, the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises described in paragraphs 1-19 of Count One of this indictment, in violation of Title 18, United States Code, Section 1957.

## Count Eight

31. On or about December 12, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, did knowingly engage in, attempt to engage in, and cause others to engage in a monetary transaction by and through a financial institution affecting interstate and foreign commerce, in criminally derived property of an amount greater than $10,000, to wit: the transfer of $1 million from a bank account held by defendant, doing business as Park Capital Group, LLC, in Miami, Florida, to a bank account held by P.E., in the District of Maryland, said $1 million having been derived from specified unlawful activity, that is, the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises described in paragraphs 1-19 of Count One of this indictment, in violation of Title 18, United States Code, Section 1957.

12

## Count Nine

32. On or about December 16, 2008, in the Northern District of Georgia and elsewhere, the defendant, MATTHEW KLEINSMITH, did knowingly engage in, attempt to engage in, and cause others to engage in a monetary transaction by and through a financial institution affecting interstate and foreign commerce, in criminally derived property of an amount greater than $10,000, to wit: the transfer of $550,000 from a bank account held by defendant, doing business as Park Capital Group, LLC, in Miami, Florida, to a bank account held by Realistic Enterprises, in Cincinnati, Ohio, at least $500,000 of said $550,000 having been derived from specified unlawful activity, that is, the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises described in paragraphs 1-19 of Count One of this indictment, in violation of Title 18, United States Code, Section 1957.

A _____ *True* _____ BILL

_____ *Odith Buss* _____
FOREPERSON

SALLY QUILLIAN YATES
 *United States Attorney*

*Wm. L. M⁻K*, f.

WILLIAM L. MCKINNON, JR.
 *Assistant United States Attorney*
Georgia Bar No. 495812
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181